CENTRAL TRUST Co. *et al. v.* WABASH, ST. L. & P. RY. Co. *et al.*

*(Circuit Court, E. D. Missouri, E. D.* March 18, 1889.)

RAILROAD COMPANIES—INSOLVENCY AND RECEIVERS.

> The property of the defendant railway company, which was insolvent, was made up of the consolidation of a number of lines, some of which were taken by lease. Receivers were appointed to manage the entire system, and it was provided that any lessor might at any time assert his right to possession of lines leased by him for unpaid rent. On the petition of the receivers, showing that one branch of the system, leased to the defendants by the intervenor, was earning more than operating expenses, an order was made directing that after meeting obligations which had been directed to be discharged by former orders the rental on such branch should be paid to the intervenor, until otherwise directed, out of the rents and profits. *Held* that, as the obligations directed to be paid by former orders amounted to a large sum, and were never paid, the intervenor had no right to rely upon said order, and was not entitled to rent under it.

In Equity. On exceptions to master's report. Petition for rehearing.

*In re* intervening petition of George I. Seney, trustee. The defendant railroad company, the Wabash, St. Louis & Pacific Railway Company, was made up of the consolidation of a number of lines, some of which were taken by lease. On a bill by defendant confessing insolvency, receivers were appointed to operate the entire system, and it was provided that any lessor might at any time assert his right to possession of lines leased by him for unpaid rent. On the petition of the receivers showing that a branch of the system, the Clarinda & St. Louis Railroad, of which the intervenor was trustee, was paying more than operating expenses, an order was made which it was contended entitled the intervenor to rental for the said branch.

*Theodore Sheldon,* for intervenor.

*Wells H. Blodgett,* for receivers.

BREWER, J. The opinion filed when this case was originally decided will be found in 34 Fed. Rep. 259. At that time there were three intervening petitions before us. After discussing the general questions involved, and coming to a conclusion adverse to the intervenors, we said that this intervenor occupied a different position, and had equities based on the order of June 28, 1884, which entitled him to recover. The petition for rehearing on the part of the receivers and the purchasing committee challenges this conclusion, and it is insisted that the construction we placed on the order of June 28th is not only erroneous, but in conflict with prior rulings in this same foreclosure, and particularly with the decision in the intervening petition of Bonner, reported in 30 Fed. Rep. 332. In our original opinion we said, referring to the order of June 28th:

"There was an express order of the court in reference to that branch, and couched in such language that the intervenor had a right to rely upon it, and expect the payment of his rent, until some other order was made. Wherever a specific order is entered after showing and petition by the receivers, it

would seem as though the party stood upon a different footing, and was not called upon to assert his rights as lessor to the surrender of the leased property."

It will be seen from this quotation, as well as from the balance of the opinion, that the sole ground of difference between the case of this intervenor and the others grew out of this order of June 28th. That order, or as much as is material, reads as follows:

"It is ordered that, until otherwise directed, the receivers herein, from the incoming rents and profits of said property, after meeting such other obligations as they have been directed to discharge by the former orders of this court, pay, as the same shall from time to time mature, from whatever balance may remain in their hands,  * * *  on the 1st days of February and August, (or as soon thereafter as practicable,) the semi-annual interest at six per cent. per annum then due on two hundred and sixty-four (264) bonds of one thousand dollars each, issued in July, 1879, and secured by mortgage on the Clarinda & St. Louis Railroad, (otherwise known as the Clarinda Branch,) amounting to $7,920."

It will be observed that the receivers are directed to pay this interest "after meeting such other obligations as they have been directed to discharge by the former orders of this court." Now, only one month before, and in the order appointing the receivers, they had been required to pay—*First*, the expenses of operating and maintaining the property in their charge; and, *second*, the debts of the Wabash Company, incurred for labor and supplies during the six months preceding the receivership,—so that at the time the order to pay interest was entered there was a former and existing order to pay what is commonly known as "preferential debts." It cannot be that this order was intended to substitute or set aside former orders; indeed, it is expressly made subject to them. But it is a part of the history of this foreclosure that there were at the commencement of the receivership over three million of these preferential debts, and at the time when the sale was made under the foreclosure, there still remained over two million unpaid. The receivers were never able to pay these preferential debts, and as this order of June 28th to pay interest is expressly subordinated to the former order as to preferential debts, it follows they were never called upon to pay this interest, and the intervenor never had a perfected claim therefor. Not only is this order of June 28th subordinated to former orders; it expressly directs the source from which payment is to be made. It is "from the incoming rents and profits of said property," and, again, "from whatever balance may remain in their hands." It was not to be paid out of the *corpus* of the property, or from its sale, but simply from the rents and profits, and that this is the proper construction of the order was affirmed in the *Case of Bonner*, in which, speaking for the court, I said:

"At another time we ordered payment of rent out of the earnings of a leased line, and, in the course of an opinion which I then delivered, I said that those surplus earnings belonged to those different lines, and they should be used in payment of their obligations. But, if you will read the orders of the court that were entered, and the opinions that were announced, you will find no attempt to set aside the orders made by the court at the inception of the receivership, that the preferential debts should be first paid. Those orders stood like

warrants drawn upon a treasurer to be paid out of funds not hereinbefore appropriated."

I am satisfied from these considerations that in the former decision we did not give sufficient consideration to all the clauses of this order of June 28th, and by reason thereof we were led to make an order in favor of the intervenor, to which he was not entitled, and which was entirely out of harmony with the other administration of this foreclosure. Therefore, our attention having been called to it by this petition for a rehearing, we change the order heretofore entered to another one, in favor of the re- spondents and against the intervenor. I am also inclined to think that possibly one or two other reasons given by the respondents are sufficient to compel the ruling we now make, but I do not care to enter into any discussion of them. As I said in the former opinion, the amount involved is so large that, if we have made a mistake, it can be corrected in the supreme court. The report of the master will be confirmed, and judgment entered against the intervenor for costs.

THAYER, J., concurring.